NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AXA CORPORATE SOLUTIONS ASSURANCE; CARRAIG INSURANCE LIMITED; SANOFI-AVENTIS U.S., LLC; and MCKESSON CORPORATION<br><br>Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN LINES, INC.; MVP LEASING, INC.; and DAVID J. RIEGER, JR.<br><br>Defendants,<br><br>v.<br><br>STARTRAK SYSTEMS, LLC<br><br>Third-Party Defendants. | Civil Action No. 10-02023 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

This case is an insurance subrogation claim brought on April 22, 2010 by AXA Corporate Solutions Assurance (AXA) and Carraig Insurance Limited (Carraig) as subrogees of their insureds, Sanofi-Aventis, U.S., LLC (Sanofi) and McKesson Corporation (McKesson). The claim arises from the theft of a tractor-trailer loaded with pharmaceuticals being shipped by Sanofi to McKesson. The insurance companies filed their Complaint against Great American Lines, Inc. (Great American), the trucking carrier retained by Sanofi to transport the pharmaceuticals. On November 16, 2010, Plaintiffs amended their Complaint to include MVP Leasing (MVP) and David J. Reiger, Jr., alleging that MVP owned and/or operated the tractor-

trailer, and that Reiger was the driver.  On April 27, 2011, Defendants Great American and MVP filed a Third-Party Complaint against StarTrak Systems, LLC (StarTrak), the installer and operator of a security system for the stolen tractor-trailer.

This case comes before the Court on Third-Party Defendant StarTrak's Motion for Summary Judgment, Attorneys' Fees, Costs and Expenses.  The Court heard argument on this Motion on February 6, 2012.  For the reasons set forth herein, the Motion will be granted.

## I. FACTUAL BACKGROUND

On July 9, 2009, a tractor-trailer containing pharmaceuticals left Sanofi's facility in Forest Park, Georgia, for McKesson's facility in Memphis, Tennessee.  Sanofi was the shipper, and McKesson the consignee.  Sanofi retained Great American to transport the pharmaceuticals, MVP was the owner and operator of the tractor-trailer, and David J. Reiger, Jr., was the driver.  Pursuant to contract with Great American, StarTrak had installed and operated a wireless communication system intended to provide security for the trailer.  On the same day of the truck's departure, July 9, 2009, the tractor-trailer was stolen from a truck stop in Temple, Georgia.  Sanofi's insurers filed a Complaint against Great American on April 22, 2010, alleging violations of the Carmak Amendment to the Interstate Commerce Act, breach of contract, and negligence.  On November 16, 2010, Plaintiffs amended their Complaint to include MVP Leasing and David J. Reiger, Jr.

On April 27, 2011, Defendants Great American and MVP filed a Third-Party Complaint against StarTrak Systems, LLC (StarTrak), seeking to recover for losses resulting from the theft of the trailer under theories of breach of contract, negligence, and "common law indemnity."  StarTrak Mot. Summ. J. 4, ¶ 16; Great American Opp. to Mot. 3, ¶ 16.  The Third-Party

Complaint asserts that the StarTrak system was to report the trailer's location every 15 minutes, and that the system failed to provide this information on the day of the theft. StarTrak Mot. Summ. J. 4, ¶¶ 14-15. The parties disagree as to whether the system malfunctioned or was disabled by the thieves. *Id.* at 12 n.2.

## II.     <u>SUMMARY JUDGMENT STANDARD</u>

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether or not a fact is material is determined according to the substantive law at issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Celotex*, 477 U.S. at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Its opposition must rest on "facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If

the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   LEGAL ANALYSIS

The instant Motion asserts that Third-Party Defendant StarTrak cannot be held liable for losses caused by the theft of the truck, which had been equipped with a StarTrak security system. The dispute is governed by the contractual relationship created by a "Network Service Agreement" and a "Service Order Agreement" between Great American and StarTrak. StarTrak Mot. Summ. J. 5; Great American Opp. to Mot. 3. StarTrak argues that exculpatory language in the Network Service Agreement precludes liability for any loss caused by the theft, even if that loss was due to breach of contract or negligence. The Movant also argues that the tort claims are precluded as a matter of law, as there was no separate duty between the parties apart from that established by contract. Great American and MVP assert in opposition that the exculpatory provisions include exceptions that apply in this case. They further argue that the exculpatory provisions are unenforceable as a matter of public policy. Finally, Defendants argue that the exculpatory provisions cannot apply to MVP because it was not a party to the contract.

#### A.   The Contract Exculpates StarTrak from Liability to Great American.

Section 7 of the Network Service Agreement is entitled "Warranty." Section 7.2 provides that:

> StarTrak warrants that the Service provided under this Agreement will functionally conform to the functional summary or any functional specifications written between the parties. In addition, StarTrak will provide the Service in accordance with the service level commitments set forth in the Service Production Environment Service Level Commitments (Schedule A) (the "SLA"). StarTrak does not warrant or guarantee that the Service will be error free, or that its

4

>   operation will always be uninterrupted. Company's sole and exclusive remedy for any failures of the Service to comply with the functional summary will be for StarTrak to correct the non-conformance and provide the service levels described in the SLA.

StarTrak Mot. Summ. J. Ex. D ¶ 7.2. The Court has considered this entire provision, including the portion omitted from StarTrak's original Motion, which Third-Party Plaintiffs contend creates liability. *See* Great American Opp. to Mot. 4, ¶ 29. Despite warranties that the Service will "functionally conform" and that "StarTrak will provide the Service in accordance with" the commitments incorporated by reference, this provision explicitly does not warrant a service free from errors and interruptions. Further, it provides that Great American's "sole and exclusive remedy" is correction of any errors. Taken in its entirety, this provision clearly declines to warrant error-free or uninterrupted service.

The Network Service Agreement also contains a "Limitation of Liabilities and Disclaimer." It reads:

>   NEITHER PARTY NOR ITS SUPPLIERS WILL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT DAMAGES (INCLUDING, WITHOUT LIMITATION, CONSEQUENTIAL SPECIAL OR INCIDENTAL DAMAGES, DAMAGES TO REFRIGERATION UNITS, DAMAGES TO OR LOSS OF LOADS, DAMAGES FOR LOSS OF PROFITS OR REVENUES, BUSINESS INTERRUPTION, OR LOSS OF BUSINESS INFORMATION) ARISING OUT OF THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH POSSIBILITY WAS REASONABLY FORESEEABLE. . . . THESE LIMITATIONS WILL APPLY EVEN IF ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE. NONE OF THE LIMITATIONS AND EXCLUSIONS IN THIS SECTION APPLY TO DAMAGES OR AMOUNTS PAYABLE UNDER SECTIONS 2.3 (Account Access, 2.8 (General Restrictions), 6 (Confidentiality), 7.3 (Company Warranty), 8 (StarTrak Indemnification) . . . .

StarTrak Mot. Summ. J. Ex. D ¶ 7.2. This provision unmistakably disclaims any liability for indirect damages related to the StarTrak security system, including "loss of loads." It applies to

5

all circumstances under which such an indirect loss related to the StarTrak System might be sustained, "even if any remedy fails of its essential purpose."

The exclusion from the disclaimer of "damages or amounts payable" under Section 2.3 of the Agreement does not affect liability in this case as Great American contends. Great American Opp. to Mot. 4, ¶ 30. Section 2.3 merely defines "Account Access" for purposes of the contract as "unique access credentials" provided by StarTrak to the Company for accessing "the Service and Application Services," and "an administrative customer service site." StarTrak Mot. Summ. J. Ex. D ¶ 2.3. This exclusion from the disclaimer is unrelated to the facts of this case; Great American has not claimed that it was denied these access credentials or, in fact, access to the "Service" in general. Rather, it claimed that the Service was interrupted on the day in question, which is explicitly not covered by the Warranty, and explicitly covered by the Disclaimer—regardless of the reason for the Service interruption. To read the exclusion of Section 2.3 to cover the facts of this case would effectively cancel out the disclaimer and warranty provisions.

If these two provisions were not enough to exculpate StarTrak from liability, the contract also contains a "Disclaimer of Warranties," which states in no uncertain terms that StarTrak provides its Service "without warranty of any kind." *Id.* at ¶ 9.2.

The factual dispute over whether the system malfunctioned or was disabled is immaterial, as the above-described exculpatory language precludes liability in either circumstance.

### B.  No Public Policy Renders the Exculpatory Provisions Unenforceable.

Third-Party Plaintiffs claim that the above-quoted language is unenforceable as a matter of public policy. StarTrak, however, points to a large body of law upholding exculpatory language in contracts generally, and particularly analogizes this case to those upholding

6

exculpatory provisions in contracts for security systems. The parties agree that this argument is governed by New Jersey law.

New Jersey courts have consistently upheld exculpatory provisions in cases where a plaintiff has sought to recover from the company that installed and maintained a security system protecting plaintiff's property. *Synnex Corp. v. ADT Security Serv., Inc.*, 394 N.J. Super. 577, 588-89 (App Div. 2007) (citing cases). Recovery has been precluded by such provisions even in cases of gross negligence on the part of the security company. *Id.* at 589 (citing *Tessler & Son, Inc. v. Sonitrol Sec. Sys.*, 203 N.J. Super. 477, 481-86 (App. Div. 1985)). In general, an exculpatory provision will be enforced if "(1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable." *Gershon v. Regency Diving Ctr., Inc.*, 368 N.J. Super. 237, 248 (App. Div. 2004) (citing *Chemical Bank of New Jersey Nat. Ass'n v. Bailey*, 296 N.J. Super. 515, 527 (App. Div. 1997); *Tessler & Son, Inc. v. Sonitrol*, 203 N.J. Super. 477, 482-83, (App.Div.1985)). As in *Synnex*, 394 N.J. Super. at 588, all of the requirements for valid exculpatory provisions are met in this case.

As the *Synnex* court noted, public policy specifically favors the enforcement of exculpatory provisions in contracts for alarm systems, whether or not negligence is at issue. This is because a property owner is in a better position than the security company to insure against the loss of that property, and because these clauses are typically intended to facilitate security system contracts by allocating responsibility for the maintenance of insurance coverage, which is readily available to property owners. *Id.* at 589, 592-93. *See also State Farm Fire and Casualty Co. v.*

*ADT Security Services, Inc.*, 2010 U.S. Dist. LEXIS 74556 (July 21, 2010); *Lala v. ADT Security Services, Inc.*, 2010 U.S. Dist. LEXIS 125313 (Nov. 24, 2010).

Great American and MVP argue that this precedent is specific to stationary alarm systems, and is therefore distinguishable from the present case based on the important public interest in the free flow of interstate commerce. Great American Opp. to Mot. 11-12. However, Great American fails to explain how such exculpatory provisions impede interstate commerce. As described above, New Jersey courts have held that these provisions actually facilitate the sale and use of security systems, by appropriately allocating the responsibility to maintain insurance to the property owner. Further, Great American fails to explain how the public interest in interstate commerce is any different or more important than the public interest in protecting private property in homes or warehouses.

### C. The Tort Claims Are Precluded as a Matter of Law.

A tort remedy does not arise from a contractual relationship absent an independent duty imposed by law. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002); *Martino v. Everhome Mortg.*, 639 F. Supp.2d 484, 495 (D.N.J. 2009); *Lala*, 2010 U.S. Dist. LEXIS 125313, *11-12. The Third-Party Plaintiffs have not even alleged that StarTrak owes them any duty aside from that arising out of contract. Rather, they argue that this doctrine does not apply to their claims for contribution because the relevant tort duty owed by StarTrak is to the Plaintiffs, not to the Defendants/Third-Party Plaintiffs. However, they have not alleged any duty on the part of StarTrak to the Plaintiffs either. Indeed, there would be no basis for such an allegation; there was no contractual relationship between StarTrak and the Plaintiffs, and there is no common-law duty that might apply here. Any relationship that does exist between StarTrak and the Plaintiffs

8

is only by way of StarTrak's purely contractual relationship with Defendant Great American, which cannot itself give rise to any tort remedy.  See, e.g., Saltiel, 170 N.J. at 316.

Finally, MVP argues separately that it is not a party to the contract and that therefore its tort claims cannot be precluded.  However, absent a contract, MVP has no legally cognizable relationship with StarTrak at all. MVP has failed to allege any duty owed it by StarTrak, but has simply aligned itself with Great American as the party with an actual contractual relationship.  MVP cannot, of course, assert breach of contract claims, and does not even allege that StarTrak owed MVP a separate duty of care sounding in tort.  Thus, MVP's claims against StarTrak fail as a matter of law.

### D.  StarTrak is Entitled to Attorneys' Fees.

The Network Services Agreement provides that "[i]n any action to enforce any right or remedy under this Agreement or Service Order, or to interpret any provision of this Agreement or Service Order, the prevailing party will be entitled to recover its reasonable attorney fees, costs and other expenses."  StarTrak Mot. Summ. J. Ex. D ¶ 10.2.  Great American has not disputed that this provision appears in the contract, and does not claim that it is inapplicable for some reason.  Great American Opp. to Mot. 6, ¶ 40.  Thus, StarTrak is entitled to attorney fees and costs as the prevailing party in this litigation with Great American.

## IV.  CONCLUSION

For the foregoing reasons, Great American and MVP have failed to demonstrate any genuine dispute of material fact about StarTrak's liability in connection with the theft of the trailer.  The undisputed facts demonstrate that valid contractual language exculpates StarTrak from potential liability arising from its agreement with Great American to install and maintain a

9

security system for the trailer.  Further, Great American and MVP have both failed to allege any duty independent from the contract that would give rise to a tort claim.  Thus, these claims fail as a matter of law, and Summary Judgment is granted.  An appropriate order follows.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated:  February 21, 2012