**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AXA CORPORATE SOLUTIONS ASSURANCE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREAT AMERICAN LINES, INC., et al., <br><br> Defendants. | Civil Action No. 10-2023 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |
| PILOT TRAVEL CENTERS LLC, <br><br> Defendant/Third-Party Plaintiff <br><br> v. <br><br> AMED REY PARRA, et al., <br><br> Third-Party Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on the separate summary judgment motions of Defendants Great American Lines, Inc. ("GAL"), MVP Leasing, Inc. ("MVP") (collectively, "Transporter Defendants"), and Pilot Travel Centers LLC ("Pilot"), (collectively with Transporter Defendants, "Moving Defendants") (ECF Nos. 178-181), and on the cross motion of Plaintiff AXA Corporate Solutions Assurance ("AXA" or "Plaintiff") for summary judgment against the Transporter Defendants (ECF No. 182). In addition, Pilot moves to preclude the expert testimony

of Willie Morales (ECF No. 183), and AXA moves to preclude the expert testimony of Dr. Rosemary Erickson (ECF No. 184). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Transporter Defendants' motions for summary judgment are granted in part and denied in part; Pilot's Motion for Summary Judgment is granted; AXA's motion for summary judgment is denied; and the motions to exclude expert testimony are denied as moot.

I. **Background & Procedural History**[1]

This action arises from the theft of a shipment of pharmaceuticals ("Freight") that Plaintiff valued at approximately $9,000,000. (Pl.'s Statement of Facts ("SOF") ¶ 31, ECF No. 182-2.) The Freight was sold by Sanofi-Aventis U.S. LLC ("Sanofi") to its authorized distributor, McKesson Corporation ("McKesson"). (*Id.* ¶¶ 1, 3.) The theft occurred while the Freight was being transported from Sanofi's distribution facility to McKesson's distribution facility. (*Id.* ¶ 22.) As the Freight was shipped on "FOB Origin" terms, the risk of damage or loss to the Freight passed from Sanofi to McKesson as soon as it was loaded into the trucker's trailer at Sanofi's distribution facility. (*Id.* ¶¶ 18-19.) This Freight was one of a number of shipments that Sanofi distributed to McKesson pursuant to an Authorized Distribution Agreement ("ADA"). (*Id.* ¶¶ 3, 11.) Pursuant to the ADA, Sanofi was responsible for arranging and paying for transportation costs and ensuring that the shipments were covered by comprehensive transit insurance. (*Id.* ¶ 11.) Sanofi entered into a transportation contract with GAL for the shipments to McKesson (the "Transportation Contract"). (*Id.* ¶¶ 11-12.) Sanofi also entered into a separate Sanofi-Aventis US Transportation Quality Assurance Agreement ("Quality Assurance Agreement" or "QAA") with GAL, which includes special handling requirements and provides for periodic audits of the operating

---

[1] The facts described below are undisputed.

procedures and standards used by GAL. (*Id.* ¶ 13.) GAL entered into a private Independent Contractor Services Agreement ("ICSA") with M.V.P. to provide the trucking services and tractor trailers for Sanofi's shipments. (Transporter Defs.' Response to Pl.'s SOF ¶ 36, ECF No. 185-1.) The truck containing the Freight was owned by MVP. (*Id.* ¶ 22.)

Pursuant to these agreements, on July 9, 2009, David J. Rieger ("Rieger"), a truck driver hired by MVP, loaded the Freight at Sanofi's distribution site in Georgia onto a truck for delivery to McKesson's distribution site in Tennessee. (Transporter Defs.' Response to Pl.'s SOF ¶¶ 15-16; Pilot's SOF ¶ 1, ECF 178-2.) Thereafter, Rieger stopped at a truck stop located in Temple, Georgia, and owned by Defendant Pilot. (Pilot's SOF ¶¶ 6-7.) Rieger parked the truck in the rear parking lot of the truck stop and went into the truck stop to take a shower. (*Id.* ¶¶ 8-9.) When Rieger returned to the parking lot nearly one hour later, "he found that the vehicle had been taken." (*Id.* ¶ 9.) On the ground where the truck was previously parked was "the Prepass, broken glass from the driver's side and red plastic from the glad hand lock." (*Id.* ¶ 10.) The stolen Freight was recovered in October of 2009 by FBI undercover agents, and they arrested "six (6) individuals of Cuban origin in possession of the stolen cargo." (*Id.* ¶¶ 14-15.)

After the theft, AXA and Carraig Insurance Limited ("Carraig") reimbursed McKesson for the full value of the Freight. (Pl.'s SOF ¶ 26.) On April 22, 2010, Sanofi, McKesson, Carraig, and AXA filed a complaint against GAL for claims arising from the theft. (ECF No. 1.) On November 29, 2011, Sanofi, McKesson, Carraig, and AXA filed a Second Amended Complaint against GAL, MVP, Rieger, and Pilot seeking recovery of approximately $9,000,000 as a result of the theft of the Freight. (ECF No. 46.) In the Second Amended Complaint, Plaintiffs allege three causes of action against Transporter Defendants: (1) violation of the Carmack Amendment (Second Am. Compl. ¶¶ 21-30, ECF No. 46); (2) breach of contract (*id.* ¶¶ 31-34); and (3) breach

of an implied contract of bailment[2] (*id.* ¶¶ 35-40). Plaintiffs also allege separate claims of negligence and breach of an implied contract of bailment against Pilot. (*Id.* ¶¶ 41-58.) Thereafter, the following claims were dismissed: all claims pled by Sanofi (ECF No. 77); all claims pled by AXA and Carraig as Sanofi's subrogees or assignees (ECF No. 91); and all claims pled by McKesson (*Id.*). Therefore, the only claims that remain in this action are AXA's claims, as McKesson's subrogee, against Defendants GAL, MVP, and Pilot, and Pilot's third-party complaint against third-party defendants Amed Rey Parra, Abimael Fuente, Luis Andres Faife-Ruiz, Cesar Pereira, David Topaz, and John Does 1-5.

## II.  **Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 459-60 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

---

[2] The third cause of action in Plaintiff's Second Amended Complaint refers to Transporter Defendants' "negligence" and breach of the "standard of care required of a bailee." (Second Am. Compl. ¶¶ 35-40.) Plaintiff's briefs in support of its motion for summary judgment, however, do not refer to a claim of negligence against Transporter Defendants. (ECF Nos. 182-1, 196.) These briefs do, however, refer to a claim for breach of an implied contract of bailment. (Pl.'s Moving Br. 20-22; Pl.'s Reply Br. 11-12.) Accordingly, the Court construes the third cause of action as a claim for breach of an implied contract of bailment.

4

The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. If the non-moving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 59 n.5 (3d Cir. 1992) (internal quotation marks omitted). Furthermore, "a party does not raise a genuine issue of material fact by speculation and conclusory allegations." *Id.*

**III.    Claims Against Transporter Defendants**

As the subrogee for McKesson, AXA brings the following three claims against Transporter Defendants: (1) violation of the Carmack Amendment; (2) breach of contract; and (3) breach of an implied contract of bailment. Transporter Defendants move for summary judgment on all claims and Plaintiff cross-moves for summary judgment on the same claims.

**A.    Carmack Amendment Claim**

Plaintiff brings a claim against Transporter Defendants for violation of the Carmack Amendment, 49 U.S.C. § 14706 (the "Carmack Amendment"). (Second Am. Compl. ¶¶ 21-30.) The Carmack Amendment governs liability of truckers and other carriers engaged in the interstate transportation of goods. § 14706. Pursuant to the Carmack Amendment, a "motor carrier" providing interstate transportation of goods for hire is "liable to the person entitled to recover under the receipt or bill of lading" for the "actual loss or injury to the property." § 14706(a).

Accordingly, the Court will first determine whether GAL and MVP are "motor carriers." The Court will then consider whether the Transportation Contract waived Plaintiff's rights and remedies under the Carmack Amendment. Finally, the Court will discuss the merits of Plaintiff's claims.

### 1. "Motor Carrier" Under the Carmack Amendment

It is undisputed that GAL is a "motor carrier" within the meaning of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). (GAL's SOF ¶ 13, ECF No. 180-2.) Noting that the Carmack Amendment governs liability only for "motor carriers," MVP, however, asserts that it is not a "motor carrier." (MVP Moving Br. 4 n.1, ECF No. 181-1.) The term "motor carrier" is defined in the ICCTA as "a person providing motor vehicle transportation for compensation." 49 U.SC. § 13102(14). The term "transportation" is also defined under the act. The definition of transportation includes "a motor vehicle" and "services related to that movement, including arranging for, receipt, delivery . . . of . . . property." § 13102(21). Here, MVP disputes that it "operated" the tractor-trailer when it was transporting the Freight. (Transporter Defs.' Response to Pl.'s SOF ¶¶ 33-34.) Specifically, MVP asserts that "the driver was assigned to work for GAL, was operating under GAL's carrier authority and bore GAL's placards . . . . All operation, dispatching and accounting [for the Freight] was handled exclusively through GAL's refrigerated division." (*Id.* ¶ 34.) Notwithstanding these assertions, however, it is undisputed that MVP hired the driver and owned the tractor-trailer that transported the Freight. (*Id.* ¶¶ 15-16.) Based on these undisputed facts, a reasonable fact-finder could find that MVP served as a "motor carrier," and is thus subject to liability under the Carmack Amendment.

## 2. Waiver of Carmack Amendment Claims

Transporter Defendants argue that pursuant to 49 U.S.C. § 14101(b)(1), the Transportation Contract waived any rights and remedies that Plaintiff may have under the Carmack Amendment. (GAL's Moving Br. 5-9; MVP's Moving Br. 4-5.) The Court disagrees.

Section 14101(b)(1) provides that the shipper and carrier may waive "any or all rights and remedies under [Part B of Title 49, which includes the Carmack Amendment] for the transportation covered by the contract." § 14101(b)(1). To waive rights under the Carmack Amendment, the shipper and carrier must have a written waiver that "expressly waive[s] any and all rights" under Part B of Title 49. *Id.* Here, it is undisputed that McKesson was not a signatory to the Transportation Contract entered into between Sanofi and GAL. Nonetheless, Transporter Defendants contend that the waiver provision binds Plaintiff. Citing the Supreme Court's decision in *Norfolk Southern Railway Company v. Kirby*, 543 U.S. 14, 34 (2004), MVP asserts that "[n]othing within § 14101 requires each individual or entity having any part in the transportation of cargo to have a separate contract containing a separate waiver." (MVP's Reply Br. 3, ECF No. 194.)

The Supreme Court's decision in *Kirby* is, however, inapplicable. In contrast to *Kirby*, the contract in the present case provides that it "shall be binding upon . . . the parties hereto *only*." (Transportation Contract § VII(7), ECF No. 180-6 (emphasis added).) This language evinces an intent to limit the waiver to the signatories. *Cf. Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212 (9th Cir. 1999) (finding that provision stating "'[t]his contract binds and inures to the benefit of the parties hereto . . .' evinces the intent of the parties to limit the intended beneficiaries to the contracting parties"). Because the Transportation Contract expressly binds only the signatories to the contract, it does not waive the rights of the nonsignatories.

Accordingly, the Court finds that the waiver provision in the Transportation Contract did not waive Plaintiff's right to assert a Carmack Amendment claim.[3]

### 3. Merits of Carmack Amendment Claim

Turning to the merits of Plaintiff's claim, to state a prima facie claim against a carrier under the Carmack Amendment, a shipper must prove: "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages." *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (quoting *Beta Spawn, Inc. v. FFE Trans. Serv., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001)). "The burden then shifts to the carrier to prove it was not negligent and the damage was caused entirely by '[an] act of God[,] . . . the public enemy[,] . . .the act of the shipper [itself,] . . . public authority[,] . . . or the inherent vice or nature of the goods.'" *Id.* at 226 (quoting *Beta Spawn, Inc.*, 250 F.3d at 223).

Here, it is undisputed that the Freight was delivered in good condition to Transporter Defendants and that they failed to deliver the Freight to McKesson.[4] (Transporter Defs.' Response to Pl.'s SOF ¶¶ 15, 25.) Transporter Defendants do, however, dispute the value of the Freight. (*Id.* ¶¶ 25, 27.) In particular, Transporter Defendants dispute the amount of lost profits attributable to the value of the Freight. (*Id.*) In addition, genuine disputes of material fact remain with respect

---

[3] Since the Transportation Contract binds only the signatories to the contract, and neither Plaintiff nor Plaintiff's subrogor, McKesson, were signatories to the contract, the Court finds that Plaintiff is not bound by the Transportation Contract. Accordingly, the Court does not address the scope of the waiver and liability provisions in the Transportation Contract.

[4] Transporter Defendants have not disputed that the Freight was in good condition upon delivery. In addition, the bill of lading (Ex. H to GAL's Moving Br., ECF No. 180-10) does not indicate that the Freight was defective. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) ("[A] shipper's burden of proving that the goods were delivered to the carrier in good condition may be satisfied by the proffer of a clean bill of lading for the shipment.") (internal citations omitted).

to Transporter Defendants' affirmative defenses – namely whether they were negligent and whether Sanofi caused the damage to the Freight. *See also Specialty Prods. Int'l., Ltd. v. Con-Way Transp. Serv., Inc.*, 410 F. Supp. 2d 423, 431 (M.D.N.C. 2006) (denying shipper's motion for summary judgment because genuine issues of material fact remained as to whether motor carrier was free from negligence and whether damage to cargo was due solely to shipper fault).

Accordingly, Transporter Defendants' and Plaintiff's motions for summary judgment are denied with respect to the Carmack Amendment claim.

### B. Breach of Contract and Breach of An Implied Contract of Bailment Claims

#### 1. GAL's Motion for Summary Judgment

AXA also asserts breach of contract and breach of an implied contract of bailment claims against GAL. (Second Am. Compl. ¶¶ 31-40.) These claims are preempted by the Carmack Amendment. In *Certain Underwriters at Interest at Lloyds of London v. United Parcel Service of Am., Inc.*, the Third Circuit addressed the broad preemptive scope of the Carmack Amendment. 762 F.3d 332, 336-37 (3d Cir. 2014). In *Certain Underwriters*, an insurer brought state law claims against the United Parcel Service of America ("UPS") to recover damages for property that was lost or stolen while in transit. The claims alleged by the insurer included breach of contract, negligence, and negligent supervision of employees. Finding that all of the claims were preempted by the Carmack Amendment and that plaintiff had not pled a violation of the Carmack Amendment, the district court dismissed the insurer's complaint for failure to state a claim. *Id.* at 333-34. Affirming this decision, the Third Circuit "reaffirm[ed]" its holding that "state law breach of contract and negligence claims against a carrier for loss of or damages to goods are preempted." *Id.* at 336. Accordingly, this Court finds that all of AXA's state law claims against GAL for loss of or damage to the Freight are preempted.

### 2.   MVP's Motion for Summary Judgment

As discussed above, MVP asserts that it "is not a motor carrier, and expressly reserves that argument." (MVP's Moving Br. 4 n.1.) If MVP is found to be a "motor carrier," then AXA's state law causes of action are preempted. Assuming, however, that MVP prevails in showing that it is not a motor carrier, then preemption does not apply and MVP may be subject to AXA's state law claims. Nonetheless, for the reasons discussed below, the Court finds that AXA's state law claims against MVP fail as a matter of law.

As to the breach of contract claim, AXA does not address this claim as to MVP in either of its submissions to the Court. (Pl.'s Moving Br. 11-16; Pl.'s Reply Br. 7-9; *see also* Second Amended Compl. ¶ 34) Accordingly, the Court finds good cause to grant MVP's motion for summary judgment with respect to the breach of contract claim as unopposed. Next, with respect to the breach of an implied contract of bailment claim, AXA argues that if the Court "does not hold MVP to be a Carmack Carrier, . . . MVP is liable under an implied contract of bailment to McKesson for the theft of the goods entrusted to them." (Pl.'s Moving Br. 20.) Under Georgia law[5], a bailment occurs when there is "a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." Ga. Code Ann. § 44-12-40. Furthermore, "a bailment relationship is created when one party is involved in an undertaking for a consideration to safeguard the personal property of another and exercises *complete dominion* at all times over the property." *Park 'N Go of Ga., Inc. v. U.S. Fid. & Guar. Co.*, 471 S.E.2d 500, 502 (Ga. 1996) (emphasis added). Here, pursuant to applicable federal

---

[5] The parties agree that Georgia law applies to Plaintiff's breach of an implied contract of bailment claim against MVP. (Pl.'s Moving Br. 20-21; MVP's Moving Br. 11.)

regulations, the tractor and trailer were both deemed to be under GAL's exclusive possession, control, and use. 49 C.F.R. § 376.12(c)(1). As such, AXA has not shown that MVP entered into an implied contract of bailment with respect to the Freight.

Accordingly, Transporter Defendants' motions for summary judgment on Plaintiff's breach of contract and breach of an implied contract of bailment claims are granted, and AXA's motion for summary judgment on its breach of contract and breach of an implied contract of bailment claims is denied.

## IV. Claims Against Pilot Travel Center

In addition to its claims against Transporter Defendants, AXA also alleges a negligence claim against Pilot.[6] (Second Am. Compl. ¶¶ 41-53.) AXA asserts that Pilot "allowed the subject shipment of pharmaceuticals to be stolen, by reason of the deficiencies in the security and/or training and/or hiring of personnel involved at [Pilot's] facility." (*Id.* ¶ 51.) "To prevail on a cause of action for negligence under Georgia law, the plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages."[7] *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1312-13 (quoting *Black v. Ga. S. & Fla. Ry. Co.*, 415 S.E.2d 705, 707 (Ga. Ct. App. 1992)). With respect to the duty of a property owner like Pilot to "keep an invitee safe from the criminal act of a third party," the following two principles of law govern the imposition of liability: "[1] an owner or occupier must protect an invitee against the

---

[6] In its Second Amended Complaint, Plaintiff also asserts a bailment claim against Pilot. (Second Am. Compl. ¶¶ 54-58.) In its opposition to Pilot's Motion for Summary Judgment, however, Plaintiff concedes that "as a matter of law . . . no bailment relationship existed with respect the property in question." (Pl.'s Opp'n Br. 15, ECF No. 189.) Accordingly, the Court grants Pilot's Motion for Summary Judgment with respect to Plaintiff's breach of an implied contract of bailment claim.

[7] The parties agree that Georgia law applies to Plaintiff's negligence claim against Pilot. (Pilot's Moving Br. 5 n.1, ECF 178-1.)

11

criminal act of a third party only to the extent that the criminal act is reasonably foreseeable[,]" and "[2] even when a criminal act is reasonably foreseeable, an owner or occupier is not liable for injuries resulting from the criminal act of a third party unless he had superior knowledge of the danger." *Id.* at 1313 (quoting *B-T Two, Inc. v. Bennett*, 706 S.E.2d 87, 92 (Ga. Ct. App. 2011)).

Here, Pilot argues that it is entitled to summary judgment on AXA's negligence claim for the following reasons: (1) Pilot did not owe Plaintiff a duty of care because the theft was not foreseeable to Pilot; (2) even if the theft was foreseeable, Pilot did not owe Plaintiff a duty of care because Pilot did not have superior knowledge as to the risk of theft; and (3) in the absence of any evidence as to how the theft occurred, Plaintiff cannot show that Pilot's negligence was the proximate cause of the theft. (Pilot's Moving Br. 4-46, ECF No. 178-1.) The Court finds that genuine disputes of fact remain with respect to the foreseeability of the theft and knowledge of the risk of theft. The Court, however, agrees that Plaintiff has failed to offer evidence sufficient to find causation. Accordingly, because a "failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," the Court finds that AXA's negligence claim against Pilot fails as a matter of law.

With respect to causation, Pilot argues that Plaintiff cannot show causation because the evidence regarding how the theft actually occurred is insufficient. (*Id.* at 27-46.) The Court agrees. In particular, the only evidence that Plaintiff has offered as to how the theft occurred is the discovery of "the Prepass, broken glass from the driver's side, and the red plastic from the glad hand lock." (Pilot's SOF ¶ 10, ECF No. 178-2.) This evidence is not sufficient to support a finding that "it is more likely than not that the conduct of [Pilot] was a cause in fact" of the theft. *Hobday v. Galardi*, 598 S.E.2d 350, 352 (Ga. Ct. App. 2004) (citation omitted); *see also Brown v. Amerson*, 469 S.E.2d 723, 725 (Ga. Ct. App. 1996) ("Guesses or speculation which raise merely conjecture

or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."). Plaintiff argues that Pilot caused the theft by, inter alia, failing to: utilize closed circuit television cameras; employ security guards; and restrict access to the lot by a security gate and perimeter fence. Plaintiff makes this argument, however, without evidence as to, inter alia: who perpetrated the theft;[8] whether it was perpetrated by a single individual or a group of thieves; or whether and how the perpetrators targeted the freight. Consequently, Plaintiff's argument is merely speculative. *Compare Post Props. Inc. v. Doe*, 495 S.E.2d 573, 578-79 (Ga. Ct. App. 1997) (reversing denial of summary judgment for apartment owner on premise liability claim where there was no evidence concerning how the assailant entered the premises), *and Walker v. Aderhold Props. Inc.*, 694 S.E. 2d 119, 123 (Ga. Ct. App. 2010) (reversing grant of summary judgment for management company on premise liability claim where plaintiff provided "videotaped police interview in which [assailant] said he walked through an open gate").

Accordingly, the Court grants Pilot's motion for summary judgment with respect to all of Plaintiff's claims against Pilot.[9]

## V. Conclusion

For the reasons set forth above, Transporter Defendants' motions for summary judgment are granted in part and denied in part; Pilot's Motion for Summary Judgment is granted; AXA's

---

[8] It is undisputed that "six (6) individuals of Cuban origin" were found to be "in possession of the stolen cargo" three months after the theft. (Pilot's SOF ¶ 15.) Plaintiff has not, however, indicated that there is any evidence that connects these individuals to the actual theft.

[9] Because the Court grants Pilot's Motion for Summary Judgment, which dismisses all of Plaintiff's claims against Pilot, the Court denies the following motions as moot: Pilot's Motion for Partial Summary Judgment (ECF No. 179); Pilot's Motion to Preclude the Expert Testimony of Plaintiff's Proposed Expert Willie Morales (ECF No. 183); and Plaintiff's Motion to Preclude the Expert Testimony of Pilot's Proposed Expert Dr. Rosemary Erickson (ECF No. 184).

motion for summary judgment is denied; and the motions to exclude expert testimony are denied as moot. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** December 23, 2015